Good morning, Your Honors. Stacy Elias, Counsel for Elaine L. Chau, Secretary of the United States Department of Labor, and the appellant herein. I would like to reserve two minutes for rebuttal, if I may. All right. We are here today because Barclay Grayson suffers from buyer's remorse and now seeks to opt out of a single provision of a stipulation and order executed with the Department of Labor in September of 2000, an order that Mr. Grayson specifically instructed his counsel to sign for him on his behalf. Wait a minute. Is there a finding that Grayson instructed Unger to sign that paper? Yes, Your Honor. It's certainly in the overall opinion, and it was testified to by Mr. Grayson. He instructed him to go out to the meeting. No, he – yes, he did, Your Honor, and as well, after discussing the DOL order with his counsel, sent his counsel off to court on the morning of September 21st, knowing that his counsel was entering into this agreement with the Department of Labor. Well, but did Grayson know what the agreement said? Had he seen the agreement when he instructed counsel to go ahead and sign it? He testifies that he does not recall reading the entire agreement, and the Department has no grounds upon which to take exception to that testimony. So there's no finding that he knew what was in the agreement? No, Your Honor, but that does not matter under the law. Well, that's another question. Well, that is a question, and I will get to it. I can get to it now. It doesn't matter under the law because he relied on his counsel to represent to him what was in the agreement, even if he did not read it. Does that authorize counsel to sign any agreement with any terms? No, only an agreement that he was instructed to sign, and he went and signed this agreement. Well, that's true, but we're talking about a specific term in the agreement. Was he authorized to sign that agreement with that term in it? Yes, Your Honor, he is under Kaiser, the Oregon, the highest court of the highest Oregon case controlling this issue. And Kaiser is distinguishable, is it not? Because in Kaiser, the client had agreed to sign that settlement agreement and then change their mind. No, sir. In Kaiser, the client did not realize all the terms of the settlement agreement, and then when she learned of the terms, challenged the settlement agreement. That's exactly what happened in this case. She had now read the settlement agreement. Her counsel did not tell her of the terms in the settlement agreement, and the Kaiser court said it did not matter that she did not know all the terms of the settlement agreement. That didn't change the fact that she had given her counsel actual authority to go forward and sign the agreement. It was her responsibility to learn those terms. It was her counsel's responsibility to report those terms, but the Kaiser court accepted the fact that she did not know all the terms of that settlement and still found that her counsel had actual authority. Actual authority? Yes, sir, and apparent authority. Kaiser found both. What's the showing of actual authority here? The district court seems to have gone the other way. Right, and that's why we've appealed, Your Honor, the district court applied the facts of this case to the law incorrectly. The actual authority exists in the fact that Mr. Grayson instructed his counsel, after discussions with his counsel, to go forward and enter into the consent decree with the Department of Labor. I'm sorry, the stipulation and order with the Department of Labor. But he didn't know of that provision. That doesn't matter. Well, but that is a fact. He did not know of that provision. It is a fact, Your Honor, that he did not know of that provision. So that gets it past express authority, doesn't it? No, sir. No, sir. Okay, so if you tell your lawyer, go ahead and sign that agreement. I don't know what's in it, but go ahead and sign it. You're bound specifically to every term in that, no matter how unfriendly and how adverse, and how you would not have told him to sign it if you had known of that provision. Is that what express authority means to you? Let me correct myself, Your Honor. There is actual authority, which includes express authority and implied authority. Implied authority is actual authority. And implied authority is the authority to do those things that are necessary to complete the express authority granted to counsel. And the district court here found no implied authority? The district court found no actual authority overall and did not make much of a distinction between express and implied. Furthermore, on the issue of actual authority, well, actually, I'm sorry, I think we've covered it. I'm going to move on to apparent authority and why this case, under this case, there's apparent authority as well. And again, our support for that is the Kaiser case. Judge King in the district court and Barclay Grayson would have this court follow a principle that the only way there could be apparent authority is if there was direct contact between the Department of Labor and Mr. Grayson during the settlement negotiations. However, that is not true because here the Department of Labor was accurately represented every action Mr. Grayson took by, through his counsel, Mr. Unger. Mr. Unger reported to the Department of Labor that he met with his client after Mr. Unger had received drafts of the Department of Labor stipulation and order. He represented to the Department of Labor that he and his client discussed the stipulation and order. He represented to the Department of Labor, as well as to the district court, that his client had consented to the stipulation and order and executed the stipulation and order on behalf of his client. Now, even though the Department of Labor had never witnessed these actions, every one of these actions happened. Every one of these actions was reported accurately and truthfully to the department and to the district court. The cases relied on to both defeat actual authority and apparent authority by the district court were the Fennel and Walson cases. First, Fennel is a Second Circuit case arising out of a Southern District case in New York. Walson is a Virginia case, neither of which would have as much bearing as the Kaiser case in the present case. In both Fennel and Walson, the attorney acting on behalf of his client took action contrary to the express instructions of his client. In both Fennel and Walson, the client had said, don't do something that the attorney went ahead and did. That is not the case before this court. The case now, Mr. Unger acted completely consistently with the instructions from his client. He discussed the DOL order with his client. His client instructed him to enter into a consensual arrangement, and he went forward and did that. That's what was represented to the department. That's the behavior Mr. Grayson engaged in. Neither Fennel nor Walson have any application to this case at all. Moreover, the remedy imposed in this particular case is completely inequitable. In every case cited ñ I'm sorry, Your Honor. Before you do that, what do you make of the statement in the Kaiser opinion that the authority to negotiate with the opposing party does not by itself imply the authority to enter into a binding settlement? That's what the court said. Relying on Oregon law, the authority to negotiate with the opposing party does not by itself imply the authority to enter into a binding settlement. Right, Your Honor. And then Kaiser went on to note that the client in that case had instructed her attorney to go and execute a settlement agreement exactly as that happened in this case. First, he had the authority to negotiate. Then after discussing the agreement back and forth with his client, he came back, represented to the parties that he had authority to execute the agreement, and in fact he had authority to execute the agreement, exactly what has happened in the case with Mr. Grayson. We're not relying on his authority to negotiate. We're relying on his instructions to execute the DOL order. I just want to quickly say that the remedy is inequitable because none of the cases cited by either the district court or by Mr. Grayson support reforming a contract entered into by the parties, which is essentially what happened here. There is not a shred of evidence offered by Mr. Grayson that the Department of Labor ever would have entered into an agreement without Mr. Grayson's joint and several liability for receivership fees and expenses, and yet the department was then deprived of its ability to go forward with its TRO proceeding. And I'm going to reserve the rest of my time if I may for rebuttal. All right. Good morning. Good morning. I'm Ward Green here for Barclay Grayson. Before I address any of the comments made, I want to make a couple of observations. When I was preparing, I noticed some errors in the department's papers that I wanted to call to the court's attention because they might have a bearing on the ultimate decision. The commissioner at page 22 of her brief talks about the parties correcting an SEC order. I think the court understands there were actually two stipulated orders. That discussion is not supported in the record and I think should be disregarded. Then at page 26 of the commissioner's brief, she argues about ratification, and I wanted to point out that was never raised before Judge King until a motion for reconsideration was brought. Did you put this in your response? I apologize, Your Honor. It was not raised in my brief and I feel a little bit silly about it, but I guess until I was addressing the commissioner's papers more carefully, I didn't realize that both ratification at page 26 and then the estoppel argument that is raised at page 28 wasn't raised at all below. Again, I don't think they're essential to the outcome, but I wanted to mention those things. And before addressing the merits, and we agree that Kaiser is the organ law on this issue of apparent and actual authority, so we don't disagree that that's the sort of underlying law. But before we get there, I think the court should remember the question of whether this order was even appealable. The issue was raised earlier and then I think sort of put aside for this briefing. We contend that this was not an appealable order. There was a motion to dismiss, filed and denied. Judge King expressly in his opinion made it clear that the commissioner had the right to file any additional motions to dismiss that might be reserved to her by the bankruptcy court, returned the case to the bankruptcy court, and indeed the Chapter 13 was fully administered and a confirmation order was issued. Now, under 11 U.S.C. 1325, this is a confirmation of a Chapter 13, the court has to find that the debtor complied with all applicable rules and statutes, including, of course, eligibility. Now, if the commissioner had wanted to appeal from the confirmation order, she certainly could have done that and didn't. I just point out that the argument about appealability and what the commissioner gave up by accepting the stipulation doesn't really ring true. The commissioner got everything she could have been entitled to, even putting aside the stipulation, the language that refers to the receiver's fees. Why was it in there then if it wasn't something the commissioner needed? Well, Your Honor, I am a little bit puzzled by that because the underlying motion, which was prepared but never filed by the commissioner, didn't even request that relief. And there was no authority for that relief. Understand what the order did, Your Honor, or at least purported to do, was to make a final adjudication that Mr. Grayson was personally responsible for all of the fees and costs that might ever be incurred by this receiver. Normally, when there's this emergency order entered, it's a status quo preservation tactic. It normally would be something that would be intended to perhaps freeze assets, perhaps impose a receiver to make sure that no rights were impaired during the early phases of the litigation. But to go this next step and make a final determination that you were personally liable with no adjudication, the answer to the question of why was it there, I think, frankly, it was kind of a gotcha. I think it was something that the lawyers didn't notice in the chaos of this day. And as you know from the record, Judge King, you might say, presided over the last, let's say, the last exchange of documents. And what he really is doing here, we contend, is he's essentially correcting a stipulated order in one respect. And I think he's correctly finding that there is no evidence of any authority. In fact, I thought it was noteworthy that he says in his decision that Mr. Grayson was very credible. He came in and testified before Judge King. And I also would note for the Court that at page five of the commissioner's reply brief, she says the DOL does not dispute any relevant facts proffered by Mr. Grayson. Mr. Grayson testified point blank. He did not know this term was in the document. He didn't even know that there were two stipulated orders and didn't know that DOL was suing. What Mr. Grayson thought was that there was a settlement conference of sorts and that the lawyers were going to go try to enter into some type of agreement so his father could continue operating Capital Consultants. When this, what Judge King referred to as a surprise, kind of overwhelming force by the department and the SEC, were sort of unleashed on the lawyers, they, you might say, signed or went along with the orders. But there's no evidence that Mr. Grayson even knew that there would be an order entered. He knew that there was discussion of an agreement. But the reality of this case is that the government got essentially everything it needed. Well, didn't Grayson authorize the execution of this order? He did not, Your Honor. He testified that he understood that there would be an agreement of some kind. And that was within the authority of Unger? It certainly was within his authority to exercise the, let's say, the agreement to have a receiver appointed and to have assets frozen. So you're saying that the scope of what was finally executed went beyond what he'd been authorized, and he had no reason to expect that that would come up? That's exactly right, Your Honor. And the reason I mention this final adjudication of personal liability, that's not something that you would, in a status quo order, in a sort of an emergency TRO, you wouldn't expect a final adjudication. And if you look both at, there were two lawyers who testified at the hearing, Mr. Sepanik and Mr. Unger, both very experienced white-collar criminal defense lawyers. Both said they didn't understand that there was a final adjudication. That is, they understood that this was, in effect, a statement that my assets, if it's determined that they were ill-gotten gains or that they were somehow improperly derived from capital consultants, that they were to be frozen and that they could be applied to any claim, frankly, not just the receiver's claims. The fact is the language doesn't say that. And I don't know what to say about the lawyers maybe not being as careful in the chaos of those days and that hearing. But the plain fact is that relief is something that the commissioner wasn't entitled to. Does it matter if the commissioner was entitled to it, if they were actually agreed upon? I guess I'd have to say no, it doesn't matter. In fact, if we were in court and we had a settlement conference and the judge said, as they've done to me in state court numerous times, now let's read the agreement into the record, and Mr. Grayson or whoever the client is, did you understand that? Do you agree to that? I think the answer would be, Judge, you're bound. And Kaiser, and I think, Your Honor, you're quite right. In Kaiser, there's a finding that she actually agreed and instructed her lawyer to agree. And then, and I had to smile when I read it, she writes a letter two days later and says, I rescinded the verbal agreement. That's at page 570. So Kaiser expressly admits in this case, I did reach an agreement, and then two days later I rescinded it. Is there something in this case, I have some recollection, that the SEC and DOL lawyers said that term was, during the negotiations, that term was in there by mistake and it's going to come out? I wish I could say yes to that, Judge. What they said was there were some errors that would be cleaned up later. That's all the record really shows. It doesn't focus on this particular error, although, frankly, one of the errors was that it appeared that even the lawyers had stipulated to be personally liable for the receiver's fees, which I don't think anyone really thought was intended. You mean that's what the agreement provided? Originally. That's right, Your Honor. And they signed that? Yes, Your Honor. The lawyers signed it. Finally, and I'll be very brief, I think it's ironic, I think the court should recognize that the Department of Labor isn't here saying there's something wrong with their claim or the treatment of their claim. It's the receiver's fees that, under their argument, could possibly push us outside of the eligibility. And the irony here is, as Judge King notes, this case has been fully settled, the receiver's been fully paid, even the claimants, that is the commissioner's constituents, have settled. Well, what if we decided, if we granted the appeal in this case, would that have the effect of undoing the discharge order that had been entered by the bankruptcy court? Or could you say that because the discharge had been entered, the whole controversy is really moot? Well, my opinion is that it was moot and that we even thought about moving to dismiss the appeal on that ground. But I'm not sure what the law would tell us. If you reversed and found that the case should have been dismissed, I'm just not sure. As I said, I don't think this appeal was timely. I think it was premature. How was the receiver paid? From the estate. Thank you. Well, what if you win? Actually, Mr. Grayson, I beg your pardon. There were payments from Mr. Grayson, but his final payment was released. What if you win, counsel? What do you propose will happen? We would seek to open up the Chapter 13 proceeding because Mr. Grayson was never entitled to be under Chapter 13. And in any event, we would certainly have the rights under our stipulation in order to then collect the receivership fees, which were paid by the estate. Therefore, having been paid by the estate, they were not paid to the participants and beneficiaries. There is over $300 million in losses here. Only $0.70 on the dollar has been recovered. There are many people still out of a lot of money. And so you would then give more money to some of the recipients? Ultimately, that is exactly what the Secretary does with every penny she recovers. Assuming you can get anything out of Grayson. That's correct, Your Honor, but we are entitled to the opportunity to try. And we have the obligation to try. Has there been an appeal from the Order on Bankruptcy? No, Your Honor, because the confirmation is the only issue is the confirmation was based on this opinion. And this opinion was out of the district court. And the confirmation appeal would have had to have gone to the district court. And the district court shouldn't be reviewing a district court order. But, no, because if this appeal is effective, then with the change in the law, that change is the status of the Chapter 13. But if we were to hold that this is not an appealable order that's before us now, that ends the whole case, does it? Well, at some point it would have to be an appealable order. But it's certainly an appealable order because under the Ninth Circuit law, even if there was a premature notice of appeal filed, the ultimate finality is cured by – cures a premature notice of appeal, and there's no need to file a new notice of appeal. The only thing you could appeal would be the final order discharging the Chapter 13 proceeding. There's no other order that you could appeal. It would only be this order or that order. That's correct, Your Honor. So you'd have to appeal that order on the ground that it should have never been brought in the first place. No. We would now seek to dismiss the Chapter 13. We would file a new motion to dismiss. The confirmation of the plan still means that the Chapter 13 is continuing. It doesn't mean that it can't be at some point dismissed. But just the existing issues to that point, the motions to dismiss to that point have been now settled. But a new motion to dismiss can still remove Mr. Grayson from a Chapter 13 bankruptcy. The estate is ongoing. All right. Thank you, counsel. Thank you, Your Honor. Thank you to both counsel. The case just argued is submitted for decision by the Court. The next case on calendar for argument is Hathaway v. Multnomah County Sheriff's Office. Thank you.
judges: T.G. Nelson, Rawlinson, Pollak